IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**STEVE JAMISON AND LO REN JAMISON**                                **PLAINTIFFS**

**V.**                                        **CIVIL ACTION NO.: 1:07CV106-SA-JAD**

**UNITED STATES OF AMERICA**                                     **DEFENDANT**
**upon the relation and for the use of the**
**TENNESSEE VALLEY AUTHORITY**

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

This cause is before the Court on Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment [6]. From its review of all matters made a part of the record of this case, as well as applicable law, and being thus fully advised in the premises, the Court finds that the Motion to Dismiss or, in the Alternative, for Summary Judgment should be granted. The Court specifically finds as follows:

### I. Factual and Procedural History

This action involves a dispute regarding the scope of a permanent electric power transmission line easement and right-of-way across Plaintiffs' land. On August 10, 1972, a Declaration of Taking was filed in <u>United States ex rel. TVA v. An Easement and Right-of-Way Over 0.5 Acres of Land, More or Less, in Lowndes County, Mississippi</u>, No. EC72-82K (N.D. Miss. 1972), and the Government thereby claimed a seventy-five foot easement identified as tract WCLU-68 over property owned by Plaintiffs' predecessors in interest. The issue of just compensation was tried to a commission pursuant to Federal Rule of Civil Procedure 71A, and final judgment was entered on June 4, 1973, confirming the vesting of title in the United States and awarding just compensation as found by the commission.

Because there was an existing house on the property at the time of the 1972 condemnation, the southwestern right-of-way boundary was "notched" a few feet so that no portion of the house would be on the right-of-way. Tract WCLU-68 is bordered by a second TVA transmission line easement which crosses Plaintiffs' property.

In 1984, Plaintiffs Steve and Lo Ren Jamison acquired the property underlying the easement "SUBJECT TO existing easements . . . to Tennessee Valley Authority for installation and maintenance of overhead electrical transmission lines."

In 2006, TVA rebuilt the transmission line on tract WCLU-68 from the original single circuit line, that operated at 161-kv from 1972 to 2006, to a double circuit line that also operates at 161-kv in order to accommodate the West Point-SeverCorr Project. The Final Environmental Assessment for the West Point-SeverCorr Project provides that 14.7 miles of the transmission line route was on preexisting right-of-way. Along that 14.7 mile portion of the route, TVA planned on acquiring an additional 12.5 feet of right-of-way on the southwest side of the existing right-of-way in order to make the distance from the centerline of the 161-kv transmission line of the right-of-way edge approximately fifty feet. However, on tract WCLU-68, the location of the Jamisons' house immediately adjacent to the preexisting WCLU-68 right-of-way across the Jamisons' property constricted the proposed expansion of the right-of-way.

Like the original transmission line, the rebuilt line is offset on the WCLU-68 right-of-way to the northeast. The double-circuit line's conductor is approximately nineteen feet horizontally from the northeast eave of Plaintiffs' house, which is the nearest point of the house to the conductor. Because of the conductor's height above the ground, the straight line distance from that conductor to the northeast eave is approximately thirty-five feet.

Plaintiffs contend in their Complaint that TVA exceeded the scope of its' easements rights across Plaintiffs' land because in rebuilding the transmission line on the WCLU-68 right-of-way from a single circuit to a double circuit, TVA allegedly increased the voltage from 31-kv to 161-kv. Further, Plaintiffs seek to acquire title to the existing easement through license, acquiescence, and/or adverse possession. Plaintiffs decided, after reviewing Defendant's present motion and memorandum, to materially alter the issues in this lawsuit because of the unintentional mistakes they made with reference to the facts[1]. In Plaintiffs' Response to the present motion, Plaintiffs concede these claims mentioned above and rely on the few remaining allegations. Plaintiffs assert there has been a regulatory taking because TVA requirements have imposed a three hundred foot buffer zone outside the WCLU-68 right-of-way in which occupied buildings are prohibited. Further, Plaintiffs contend TVA is precluded from fully exercising the Government's easement rights because TVA requires the distance from the centerline of a double circuit 161-kv transmission line to the right-of-way boundary to be a minimum of fifty feet and that distance on the southwest side of the right-of-way is not met.

Plaintiffs seek a permanent injunction enjoining TVA from using its 161-kv line. Alternatively, Plaintiffs seek compensatory and consequential damages for the loss of their entire property.

The Government filed a Motion to Dismiss or, in the Alternative, For Summary Judgment. Defendant argues the Complaint fails to state a claim upon which relief can be granted, and alternatively, the United States is entitled to summary judgment in its favor because TVA's operation

---

[1] The transmission line constructed on tract WCLU-68 in 1972, has operated continuously at 161-kv, not 31-kv as alleged in Complaint. Also, Plaintiffs' house has never been physically within the easement, so Plaintiffs have no claim to possession of the easement through license, acquiescence, or adverse possession.

of the rebuilt line at 161-kv is within the scope of the Government's easement rights as a matter of law.

## II.  Standard of Review

"To qualify for dismissal under Rule 12(b)(6), a complaint must on its face show a bar to relief." Clark, 794 F.2d at 970; see also Mahone v. Addicks Util. Dist., 836 F.2d 921, 926 (5th Cir. 1988); United States v. Uvalde Consol. Indep. Sch. Dist., 625 F.2d 547, 549 (5th Cir. 1980), cert. denied, 451 U.S. 1002, 101 S. Ct. 2341, 68 L. Ed. 2d 858 (1981).    However, Rule 12(b) notes that where a motion to dismiss for failure to state a claim upon which relief can be granted includes matters outside the pleading, the motion is treated as one for summary judgment under Federal Rule of Civil Procedure 56. FED. R. CIV. P. 12(b).

The present motion must be analyzed under the standards of a motion for summary judgment because evidence outside the pleadings was presented to the Court. Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment bears the initial responsibility of identifying those

portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323, 106 S. Ct. 2548. The movant need not, however, support the motion with materials that negate the opponent's claim. Id., 106 S. Ct. 2548. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24, 106 S. Ct. 2548. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548.

Conclusory allegations, improbable inferences, and unsubstantiated assertions are inadequate to overcome summary judgment. Little v. Liquid Air Corp., et al., 37 F.3d 1069, 1075-1076 (5th Cir. 1994). Only disputes of fact that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary will not be counted. Douglass v. U.S. Auto Ass'n, 79 F.3d 1415, 1423 (5th Cir. 1996). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

### III. Discussion

**A.    Discovery**

The Government submitted its Motion to Dismiss or, in the Alternative, for Summary Judgment a little over two months after the Complaint was filed. No discovery had taken place prior to their motion. "Rule 56 does not generally require any discovery prior to a grant of summary judgment, and thus, if a party cannot adequately defend such a motion without further discovery, Rule 56(f) is the proper remedy." Howell v. Ferguson Enters., Inc., 93 Fed. Appx. 12, 14 (5th Cir.

2004) (citing Potter v. Delta Air Lines, Inc., 98 F.3d 881, 887 (5th Cir. 1996)). Under Rule 56(f), "a party seeking additional time to conduct discovery must (1) request extended discovery prior to the court's ruling on summary judgment; (2) place the court on notice that further discovery is being sought; and (3) demonstrate to the court with reasonable specificity how the requested discovery pertains to the pending motion." Id. (citation omitted). Moreover, "[t]he party seeking a continuance must show how additional discovery will create a genuine dispute as to a material fact and may not simply reply on vague assertions that additional discovery will produce needed, but unspecified facts." Hill v. Tahmakera, 38 F.3d 568, 1994 WL 574175, at * 1 (5th Cir. 1994) (citations omitted). "The decision to grant or deny a Rule 56(f) motion is within the sound discretion of the district court." Johnson v. Hinds County, Miss., 237 F. 3d 632, 2000 WL 1701835, at *1 (5th Cir. 2000).

In the present case, Plaintiffs have not submitted a formal Rule 56(f) affidavit and request for continuance. However,

> [a] nonmoving party's failure to tailor its request for additional discovery to fit Rule 56(f)'s precise measurements does not necessarily foreclose the court's consideration of the request. Although the preferred procedure is to present an affidavit in support of the requested continuance, so long as the nonmoving party indicates to the court by some equivalent statement, preferably in writing of its need for additional discovery, the nonmoving party is deemed to have invoked the rule.

Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1266-1267 (5th Cir. 1991)(internal quotations and citations omitted). Plaintiffs have argued to the Court, in writing through their Response in Opposition to Summary Judgment, that they feel discovery is needed in this case. Accordingly, the Court will interpret Plaintiffs' assertion as a request for a Rule 56(f) continuance.

Because Plaintiffs have requested discovery be conducted prior to the Court's ruling on Defendant's Motion for Summary Judgment and indicated to the Court that further discovery is

being sought, they have satisfied the first two requirements for a Rule 56(f) continuance. Thus, the question before the Court is whether the Plaintiffs have demonstrated with reasonable specificity how the requested discovery will create a genuine issue of material fact. The Court finds that the Plaintiffs have not made this showing. Plaintiffs have submitted only vague assertions that discovery will produce needed, but unspecified, facts. Further, Plaintiffs have not demonstrated that the needed facts will create a genuine issue of material fact. Therefore, to the extent Plaintiffs make a Rule 56(f) request, that request is denied, and the Court will consider the merits of the Defendant's Motion for Summary Judgment.

**B.     Scope of Easement**

TVA is an executive branch agency and instrumentality of the United States Government, created by and existing pursuant to the TVA Act of 1933, as amended, 16 U.S.C. §§ 831-831ee (2000 & Supp. IV 2004). Under the TVA Act, TVA is authorized to acquire real property in the name of the United States, by grant or condemnation, as TVA deems necessary to accomplish the purposes of the TVA Act. 16 U.S.C. §§ 831c(h), 831 c(i), 831x. Title to all such property is held in the name of the United States and the property is entrusted to TVA, as agent of the United States, to accomplish the purposes of the TVA Act. 16 U.S.C. § 831c(h).

In accordance with TVA's authority, the Government acquired the easement at issue identified as tract WCLU-68 over property owned by Plaintiffs' predecessors in interest on August 10, 1972. In 2006, TVA rebuilt the transmission line on tract WCLU-68 from a 161-kv single circuit line to a 161-kv double circuit line. Without providing any authority to support their argument, Plaintiffs contend that operation of the 161-kv double circuit line is beyond the scope of the Government's rights under the easement. Moreover, in Plaintiffs' Response in Opposition to

7

Summary Judgment, Plaintiffs concede that "[i]f TVA had merely replaced an existing single 161KV line within the 75-foot easement, Plaintiffs would have no basis for the lawsuit."

The deed conveying easement WCLU-68 provides:

A permanent easement and right of way for electric power transmission purposes, consisting of the perpetual right to enter to erect, maintain, repair, rebuild, operate, and patrol one line of poles or transmission line structures with sufficient wires and cables for electric power circuits and telephone circuits . . . .

In response to Plaintiffs' assumption, the Government argues that TVA's operation of its rebuilt 161-kv line falls squarely within the legal parameters of its permanent easement rights and relies on the following cases for support. In United States ex rel. TVA v. Batchelor, No. WC81-100-WK-P (N.D. Miss. July 23, 1981), this Court enjoined a landowner from interfering with TVA's rebuilding of a 46-kv transmission line to a 161-kv line with taller poles, finding that an easement grant "to construct, operate and maintain electric power transmission lines and . . . towers, poles, and appliances in connection therewith" on a defined right-of-way included the right to rebuild the line with taller poles and increased voltage. Final Judgment was entered in that case, permanently enjoining the landowner from interfering with the transmission line, "for the reasons set forth in the preliminary injunction." Id. (N.D. Miss. July 30, 1981).

Similarly, in Talty v. Commonwealth Edison Corporation,, Commonwealth Edison sought to "convert an existing 220-kv electric transmission line to a 345-kv line and replace existing towers with new [larger] towers." 347 N.E.2d 74, 75 (Ill. App. Ct. 1976). The court approved Commonwealth Edison's rebuilding of the transmission line under an easement granting "'a perpetual right to construct, operate, use and maintain electric transmission lines . . . .'" Id. In so holding, the court stated:

> Certainly the initial use (construction of 220-kv line) does not indicate any intention to limit the easement to lines of that size since there was no ambiguity in the grant itself . . . .

Id. at 76. The court further noted that there was no limitation in the easement language regarding the size or the number of electric transmission lines to be installed.

In the present case, the WCLU-68 easement was rebuilt from a 161-kv single circuit line to a 161-kv double circuit line. The easement language contains no limitation regarding the number of circuits to be installed. Minnkota Power Co-op, Inc. v. Lake Sure Prop., 295 N.W.2d 122, 127 (N.D. 1980) (holding that because there was no limitation in the easement on the size or number of electric transmission lines to be installed, reconstruction of a powerline with taller towers and higher voltage did not constitute a taking of additional easement rights). The Court is of the opinion that the change from a single to double circuit line amounts to a change in degree of use rather than the kind of use and does not violate the existing easement. Faulkner v. Georgia Power Co., 256 S.E. 2d 339, 340 (Ga. 1979) ("[T]he installation of additional . . . facilities to accommodate higher voltage electric lines . . . amounted to a change in the degree of use rather than in the kind of use, so as not to violate the existing easement."). Even though easement WCLU-68 was initially a single circuit line, the easement language ("electric power circuits") permits the installation of multiple circuits. Lower Colo. River Auth. v. Ashby, 530 S.W.2d 628, 632-33 (Tex. Civ. App. 1975) (upholding a utility's right under an easement grant to replace wooden H-frame poles with steel towers and higher voltage conductors; "the language of the easement . . . gives the grantee rights in excess of the one actually used and such right would still exist notwithstanding the prior exercise of a lesser privilege").

**C.     Three Hundred Foot Buffer**

Plaintiffs contend that TVA's Final Environmental Assessment for the West Point-Severrcor

Project sets out a three hundred foot buffer around easements which precludes any homes being located within the buffer area. Specifically, the Complaint states that "TVA has violated its own siting criteria by allowing houses and structures within the 300-foot (radius) of the easement." Further, Plaintiffs argue that by imposing an alleged previously non-existent three hundred foot radius buffer around the existing easement when it installed the new dual circuit system, TVA has affected a regulatory taking of the Jamisons' complete home site.

The Government responds that the buffer is merely a factor TVA uses in making transmission line routing decisions not an absolute constraint. The following language of the Final Environmental Assessment substantiates the Government's argument:

> [t]he transmission line route selection team uses a constraint model that place a 300-foot-radius buffer around occupied buildings . . . Although not absolute location constraints, these buffers weigh heavily in location decisions, influencing selection of route options and alignments.

The Final Environmental Assessment in which Plaintiffs rely evidences that the three hundred foot radius buffer is merely a siting criteria – a factor used by the route selection team when considering route options. More importantly, the Government admits that TVA has no legal right under the terms of the WCLU-68 easement to preclude buildings, occupied or not, on Plaintiffs' land outside the metes and bounds of the WCLU-68 right-of-way, and TVA does not claim to have any such right based on the WCLU-68 easement or otherwise.

In support of its position, the Government cites Persyn v. United States, 32 Fed. Cl. 579 (1995). In Persyn, the plaintiffs were owners of land within "accident potential zones" outlined by a Department of Defense program through which the DOD identified potential accident sites and promoted compatible civilian development in such zones. In 1984, the Department of Housing and

Urban Development issued a regulation under which projects that were inconsistent with DOD recommendations for land use in accident potential zones would not be approved for HUD assistance. The plaintiffs argued that DOD's 1977 designation of accident potential zones coupled with HUD's 1984 regulation constituted a regulatory taking of their property. The court rejected the argument, holding:

> Neither regulation in any way prohibits plaintiffs from using their property in any manner. The 1977 regulation merely provides "guidelines" for suggested uses that would conform with the hazards associated with land adjacent to or near military airports. The HUD regulation also does not prohibit use, it merely denies government funding for certain projects. . . .

Persyn, 32 Fed. Cl. at 585.

Here, as in Persyn, the Court agrees with the Government that no TVA regulation or guideline prohibits Plaintiffs from using their property outside the right-of-way in any manner. The Court is of the opinion that the Government has met its burden of demonstrating that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Plaintiffs have submitted no evidence in support of their Response to the Motion to rebut the Government's showing, instead offering only broad conclusory allegations that TVA's three hundred foot buffer constitutes a regulatory taking. Plaintiffs have not met their burden, and the Court is of the opinion that summary judgment is appropriate as to this claim.

**D.     Fifty Foot Right-of-Way**

Plaintiffs allege a genuine issue of material fact exists as to whether TVA has violated its own regulations in installing the dual circuit system without acquiring the proper right-of-way width in advance. The Final Environmental Assessment provides that the new transmission line would be partially constructed on the existing right-of-way for which an additional 12.5 feet of new right-of-

way would be added to the width of the existing right-of-way. Moreover, Plaintiffs contend that the "requirement for the 12.5-foot easement is apparently required for the double-circuit 161KV line." Plaintiffs aver that the replacing of an "unauthorized" transmission pole within a seventy-five foot right-of-way that is too small for it constitutes inverse condemnation of Plaintiffs' property. Specifically, Plaintiffs argue that the proper right-of-way width for a double-circuit 161KV line is fifty feet from the centerline for a total of one hundred feet.

In response, the Government submits the affidavit of Joan M. Dodd, Manager of Transmission Line Projects (TLP), Electric Systems Projects (ESP), in TVA's Power Systems Operations, wherein Dodd provided and explained TVA's right-of-way standards. TVA's Electric System Projects Standard Department Procedure (SDP) ESP-SDP-09-002.2.2 states that "161-kv single-circuit or double-circuit lines will have 100 feet of right-of-way for all structure types." However, the paragraph immediately following that statement specifically provides for non-standard right-of-way widths in cases such as this where an existing right-of-way is being used for a rebuild, existing buildings constrict right-of-way expansion, and National Electrical Safety Codes [NESC] clearances are satisfied. Id.

As stated in ESP-SDP-09-002.2.2:

> Most ROW [right-of-way] width standards have some margin of safety beyond NESC clearance requirements and lines may be designed with non-standard ROW widths to meet special needs. This might occur if an existing easement must be used for a larger line but existing buildings constrict right-of-way expansion, or in other constricted circumstances. Any proposal to vary the standard right-of-way must be coordinated closely with both Transmission Line Systems Engineering & Design and the Transmission Services Manager. Special structure types, shorter spans, or greater design tension may be required to meet special width constraints.

Dodd testified that the location of the Jamisons' house, which is immediately adjacent to the

preexisting WCLU-68 right-of-way, constricted the proposed expansion of the right-of-way. Electric System Projects subsequently decided, in accordance with ESP-SDP-09-002.2.2, not to expand the right-of-way across the Jamisons' property and that decision was coordinated closely with both Transmission Line Systems Engineering & Design and the Transmission Services Manager. Further, Dodd notes that the double-circuit line was designed to meet or exceed NESC clearance standard on the Jamisons' property and comply with the electric and magnetic field standards of ESP-SDP-09-002.4.3.

Defendant has met its burden of demonstrating there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. However, Plaintiffs have failed to rebut Defendant's showing that TVA acted within the easement's authority and in accordance with TVA standard procedure, and therefore, summary judgment is appropriate.

## IV. Conclusion

Based on the foregoing analysis, the Court finds that Plaintiffs have not presented sufficient evidence to establish genuine issues of material fact for resolution at trial with respect to their claims. Viewing the evidence in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs are unable to satisfy their burden and Defendant is entitled to judgment as a matter of law. Defendant's Motion for Summary Judgment is GRANTED, and this civil action is DISMISSED.

SO ORDERED this the 19th day of September 2008.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**